IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANA F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23 C 1965 |
| v. | ) |
| | ) Magistrate Judge |
| MARTIN J. O'MALLEY, | ) Daniel P. McLaughlin |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dana F.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [9] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [13] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On or about March 19, 2019, Plaintiff filed a claim for DIB, alleging disability since December 31, 2014. Following a hearing, an Administrative Law Judge ("ALJ") issued a favorable decision on October 1, 2021, finding that Plaintiff had been disabled under the Social Security Act since December 31, 2014. However, finding error in the ALJ's decision (including that the ALJ adjudicated the wrong time period), the Social Security Administration Appeals Council vacated the decision and remanded the matter on February 7, 2022. The ALJ held a telephonic remand hearing on October 20, 2022, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A psychological medical expert ("ME") and a vocational expert ("VE") also testified. Plaintiff amended her alleged onset date to December 31, 2008.

On November 1, 2022, the ALJ denied Plaintiff's claim for benefits, finding that Plaintiff was not disabled under the Social Security Act for the period of December 31, 2008 through December 31, 2014. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's November 1, 2022 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's November 1, 2022 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the

Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ determined that December 31, 2008 was Plaintiff's Title II date last insured and December 31, 2014 was Plaintiff's Title XVIII date last insured. The ALJ found at step one that Plaintiff had engaged in substantial gainful activity during the years 2011 and 2014. At step two, the ALJ concluded that – through the date last insured – Plaintiff had the following severe impairments: obesity; status post craniotomy; post-traumatic stress disorder (PTSD); migraine headaches; and seizures. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can never climb ladders, ropes, or scaffolds; should avoid exposure to hazards; and is limited to work involving simple instructions, few changes, and no hourly production quotas. At step four, the ALJ concluded that Plaintiff would have been unable to perform her past relevant work as a psychiatric technician. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from December 31, 2008 (the amended alleged onset date and Title II date last insured) through December 31, 2014 (the Title XVIII date last insured).

3

## **DISCUSSION**

I.  **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow

5

. . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's step three finding that there is no listing level severity is unsupported by substantial evidence; and (2) the ALJ's RFC assessment arises out of a flawed assessment of Plaintiff's subjective claims and the medical opinion evidence.

In advancing her second argument, Plaintiff contends, *inter alia*, that the ALJ improperly discounted her alleged symptoms and subjective statements. ([9] at 13-15.) With respect to an ALJ's assessment of a claimant's alleged symptoms, this Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)

(internal quotations and citation omitted). However, it is "well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision, and an ALJ must set forth 'specific reasons' for discounting subjective reports of symptoms." *Andrew D. v. Kijakazi*, No. 20 C 6091, 2023 WL 2683468, at *3 (N.D. Ill. Mar. 29, 2023) (citations omitted). Pertinent to Plaintiff's argument, in his decision, the ALJ noted Plaintiff's primary allegation "that she could not work due to uncontrolled seizures." (R. 19.) The ALJ noted Plaintiff's testimony that "she has two different types of seizures" and "has several per week." (*Id.*) However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

     In support of his conclusion in that regard, the ALJ more specifically stated that Plaintiff's statements "are inconsistent because the alleged severity is not supported by medical records." (R. 19.) However, with respect to medical records concerning Plaintiff's seizures during the time period in question, the ALJ went on to summarize records showing that Plaintiff "was still having seizure episodes, sometimes associated with incontinence" as of December 2014. (*Id.* at 20.) The ALJ further noted that a "[m]ental status exam on July 21, 2014 . . . noted loss of time (non-epileptic seizures)" and that "[o]n March 1, 2014, the claimant presented to the Glenbrook Hospital Emergency Department stating that she broke a tooth, was incontinent of urine, and lost a big chunk of time." (*Id.* at 20-21.) Similarly, the ALJ then noted that after having a "seizure while lying in bed and . . . associated

7

incontinence" Plaintiff "presented to Glenbrook Hospital Emergency Department [on September 14, 2014] following a seizure that led to her tooth breaking off." (*Id.* at 21.) The ALJ then stated as follows:

> Symptoms continued in the months after the Title XVIII date last insured. On February 9, 2015, the claimant reported to Dr. Burrowes that she had been dissociating a lot. March 30, 2015, the claimant again presented to Glenbrook Hospital Emergency Department after a seizure, with a cracked tooth and urinary incontinence. She also reported that she had a seizure a week prior. March 30, 2015 CT scan of the brain was compared to the March 2014 CT scan. It indicated encephalomalacia left frontal lobe and area of prior infarction left candate nucleus and basal ganglia. The claimant was tired and breathless on April 7, 2015 emergency department follow-up with Dr. Burrowes following a seizure. On assessment, the claimant was anemic, had a headache, hypercholesteremia, seizures, hypertension, hypothyroid, menorrhagia, and PTSD.

(*Id.* at 21 (citations omitted).)

The Court finds that the ALJ erred in this case as he did not sufficiently explain his reasoning for apparently rejecting Plaintiff's allegations concerning her seizures. *See Grose v. Kijakazi*, No. 21 C 5866, 2023 WL 2572453, at *7 (N.D. Ill. Mar. 20, 2023); *Andrew D.*, 2023 WL 2683468 at *3 ("The ALJ did not sufficiently discuss how the record evidence undermined Claimant's credibility nor did she adequately explain which allegations were not supported by the medical evidence."). The reasons for the ALJ's adverse credibility determination regarding Plaintiff's seizures are unclear, as all of the medical records cited by the ALJ on that topic appear to corroborate Plaintiff's allegations about her seizures. In light of the disconnect between the ALJ's adverse credibility finding and the medical records he cited, the Court is unable to determine why the ALJ concluded that Plaintiff's allegations were not fully corroborated. *See Cardenas v. Berryhill*, No. 17 CV 8242,

8

2018 WL 5311899, at *5 (N.D. Ill. Oct. 26, 2018) ("[T]he ALJ did not provide a sufficient explanatory basis for her adverse credibility finding in this regard, and the Court is unable to trace the logical path between this evidence and her conclusion."). The Court does not point to the evidence concerning Plaintiff's seizures to reweigh it. The point, rather, is that – in light of the evidence concerning Plaintiff's seizures that the ALJ himself cited – the Court genuinely cannot discern why the ALJ discounted Plaintiff's alleged seizures and thus cannot engage in meaningful judicial review. *See Warnell*, 97 F. 4th at 1054. Accordingly, this matter must be remanded. *See Thomas v. Colvin*, No. 11 C 8956, 2014 WL 4413790, at *12 (N.D. Ill. Sept. 5, 2014) ("For these reasons, we find that the ALJ's credibility assessment lacks adequate explanation and leaves us unable to trace the path of her reasoning. As a result, remand is required.").

In advancing her second argument, Plaintiff also contends that the ALJ did not properly evaluate the medical opinions. Along those lines, Plaintiff asserts that the ALJ erred because "he provided virtually no cogent articulation for his rejection of any medical opinion that endorsed work-preclusive functions." ([9] at 15.) Because Plaintiff filed her claim in 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead

9

required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In particular, Plaintiff asserts that the ALJ did not properly explain his rejection of the opinions of Dr. Burrowes, Plaintiff's primary care provider. Pertinent to that assertion, the ALJ noted Dr. Burrowes' opinions, including her opinion that Plaintiff had minimal residual functionality and "had medically determinable impairments that prevented her from working including PTSD, seizures, and history of brain tumor." (R. 22.) In rejecting Dr. Burrowes' opinions, the ALJ reasoned that some of Dr. Burrowes' opinions were made after the date last insured and "[t]he functional limits assessed by Dr. Burrows [sic] are somewhat vague." (*Id.*) The ALJ also stated that Dr. Burrowes' opinions "were inconsistent

10

with the opinion of [medical expert] Dr. Goldstein." (*Id.*) The Court agrees with Plaintiff that the ALJ's assessment of Dr. Burrowes' opinions is inadequate.

"[W]hile a detailed analysis is not required, the ALJ must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Evonne R. v. Kijakazi*, No. 20 CV 7652, 2022 WL 874650, at *5 (N.D. Ill. Mar. 24, 2022) (citations omitted). In this case, the Court finds that the ALJ did not sufficiently expound upon the supportability and consistency of Dr. Burrowes' opinions. *Steven H. v. Kijakazi*, No. 20-CV-50181, 2022 WL 972328, at *5 (N.D. Ill. Mar. 31, 2022); *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022).[3] Along those lines, the Court concludes that the ALJ's terse analysis falls short of what is required. *See Jomarie S. v. Kijakazi*, No. 20-CV-7029, 2022 WL 2105916, at *4 (N.D. Ill. June 10, 2022) ("The categorical statements made by the ALJ are not supported [by] the record in this case, and a more nuanced discussion regarding the supportability and consistency of the treating psychiatrist's opinion is necessary.").

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were

---

[3] The Court agrees with Plaintiff that the ALJ engaged in circular reasoning in stating that Dr. Burrowes' opinions were inconsistent with the opinion of Dr. Goldstein, the non-examining medical expert. The Court also agrees that because Dr. Burrowes "supplied numerous opinions over a number of years, beginning in 2013, far more 'articulation' was required to suggest that a non-examining psychologist was entitled to greater deference." ([9] at 15.)

11

omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that all pertinent listings are properly examined and Plaintiff's RFC is properly derived.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse or remand the Commissioner's decision [9] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [13] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**    **ENTERED:**

**DATE:      January 10, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**